```
                  UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


MARIBETH CHUDYK-HEISHMAN,        :   CIVIL NO. 1:05-CV-1559
                                 :
            Plaintiff            :   (Magistrate Judge Smyser)
                                 :
       v.                        :
                                 :
LIBERTY MUTUAL INSURANCE CO.,    :
                                 :
            Defendant            :
```

**MEMORANDUM**

This case was removed to this court from the Court of Common Pleas of Cumberland County.

The case was initiated in that court on July 15, 2005 in the form of a Motion to Vacate and/or Modify the Award of the Arbitrators filed by Maribeth Chudyk-Heishman (referred to herein as "plaintiff" or as "Chudyk-Heishman"). The case was removed to this court on August 3, 2005 by the defendant, Liberty Mutual Insurance Company. The removal notice states that there is diversity of citizenship and that this court has jurisdiction under 28 U.S.C. § 1332.

Liberty Mutual Insurance Company is Chudyk-Heishman's underinsured motorist insurance carrier.

The motion to vacate (Doc. 1) avers that Maribeth Chudyk-Heishman was involved in an automobile accident on May 5, 2000 in Cumberland County on Route 81.[1]

It is averred that Chudyk-Heishman was operating a vehicle that was behind the vehicle operated by Abigail Mearig. The vehicle operated by Steven Verdensky was behind the vehicle operated by Chudyk-Heishman.  It is averred that Mearig applied her brakes and pulled off on to the left hand shoulder or median strip of the highway.  Chudyk-Heishman was forced by Mearig's action to slow her vehicle, and the Verdensky vehicle collided into the rear end of the Chudyk-Heishman vehicle. Chudyk-Heishman filed suit in the Cumberland County Court of Common Pleas against both Verdensky and Mearig.  With the consent of Liberty Mutual Insurance Company, Chudyk-Heishman settled her claim against Verdensky for the policy limits under Verdensky's policy.  It is averred that Chudyk-Heishman entered a pro rata release, which eliminated any potential joint and several liability on the part of defendant Mearig.  Chudyk-Heishman had prior to the settlement, sought affirmation from Liberty Mutual that if the potential for joint and several liability were eliminated, Mearig would be legally responsible for only her "pro rata share" of the total verdict and that, therefore, Liberty Mutual as the underinsured motorist coverage carrier, would receive credit only for "Mearig's pro rata

---

[1] Although the motion states that the accident occurred on "Interstate 80", we are satisfied from all of the record that it happened on Interstate Route 81.

share" in any underinsured motorist claim.  There was no affirmation of this construct given by Liberty Mutual.

Chudyk-Heishman made a claim to Liberty Mutual for underinsured motorist benefits.  The matter was submitted to arbitration.  Chudyk-Heishman asked the arbitration panel to determine whether Mearig was negligent and, if so, to state her "pro rata" share of responsibility.  In May of 2003, the arbitrators issued a decision stating that if Chudyk-Heishman were to proceed to underinsured arbitration prior to resolving the third party claim against Mearig, Liberty Mutual would receive credit for the entire insurance policy of Mearig and not just for Mearig's pro rata share of responsibility.  Chudyk-Heishman subsequently settled with Mearig for an amount less than the policy limits under Mearig's policy.

An arbitration occurred on May 24, 2005.  An issue that was argued was the amount of credit that Liberty Mutual should receive based upon the Mearig settlement.  On June 16, 2005, the arbitrator decided that the gross amount of damages to which Chudyk-Heishman is entitled is $300,000.  The arbitrators determined that the $300,000 should be reduced by all payments made on behalf of Verdensky and the policy limits applicable to the vehicle driven by Mearig.  In effect, the arbitrators determined that Liberty Mutual was entitled to credit for the entire policy limits applicable to both Verdensky and Mearig without a determination of Mearig's pro rata share of responsibility.

3

The Liberty Mutual policy provides that Liberty Mutual will pay underinsured motorist benefits if the limits of liability under any applicable bodily injury bonds or policies have been exhausted.  Chudyk-Heishman asserts in the Motion to Vacate that this policy language violates Pennsylvania public policy in that it does not require or permit a determination of whether Mearig was causally negligent so as to determine whether the insured is legally entitled to recover from Mearig or a determination of the comparative negligence of multiple tortfeasors.  The Motion to Vacate asserts that Pennsylvania public policy is violated by this policy language because this provision forces an insured to proceed to trial against various tortfeasors to determine the amount that the insured is legally entitled to recover from potential tortfeasors and because Pennsylvania law, 75 Pa. C.S. § 1731, requires insurers to provide underinsured motorist benefits that the insured is "legally entitled to receive."

By Order of October 31, 2005, pursuant to 28 U.S.C. § 636(c), this case was assigned to this magistrate judge.  A case management conference was held, and a case management order was entered (Doc. 11) on November 18, 2005.  Motions for summary judgment were filed, and supporting briefs were filed (Docs. 13-17).

A statement of agreed facts was filed (Doc. 15).  The following facts are undisputed:

4

1.   On May 4, 1999, Maribeth Chudyk-Heishman was operating her 1997 Ford Escort in the left lane of Northbound Interstate 81 in Cumberland County, Pennsylvania.  Immediately in front of her vehicle, also in the left lane, was a vehicle operated by Ms. Abigail Mearig.  Directly behind Ms. Chudyk-Heisman was a vehicle operated by Steven Verdensky.  Ms. Mearig suddenly applied her brakes and pulled her vehicle onto the left hand berm of the roadway. Ms. Chudyk-Heisman applied her brakes and veered her vehicle left to avoid rear ending Ms. Mearig's vehicle but was struck in the rear by the vehicle operated by Mr. Verdensky.  At no time did Ms. Chudyk-Heisman's vehicle strike or make contact with the vehicle operated by Ms. Mearig.

2.   As a result of the injuries sustained in this accident, Ms. Chudyk-Heisman filed a civil action in Cumberland County against both Verdensky and Mearig alleging negligence on both their parts.

3.   The Chudyk-Heisman vehicle was insured under a policy of automobile insurance issued by Liberty Mutual Company which included under insured motorist coverage.

4.   Plaintiff agreed to settle her claims against Verdensky for his policy limits of $115,000.

5. By letter dated May 1, 2001, Plaintiff's counsel wrote to Liberty Mutual seeking consent to settle with Mr. Verdensky and enclosing a proposed Release.

6. A representative of Liberty Mutual responded to that letter by letter dated May 7, 2001 and in a second letter dated June 7, 2001 consented to the Verdensky settlement and waived Liberty Mutual's right to subrogation.

7. While the civil action in Cumberland County was still pending, Plaintiff made a claim for underinsured motorist benefits with Liberty Mutual.

8. As a result of that claim, an arbitration hearing was held on May 14, 2003, and the arbitrators issued a decision.

9. After the arbitrators issued their decision, Plaintiff settled her claim with Mearig for $175,000 and requested consent to settle from Liberty Mutual Insurance Company.  Ms. Mearig's policy limits were $300,000.

10. By letter dated December 30, 2003, Liberty Mutual corresponded to Plaintiff's counsel consenting to the settlement and waiving subrogation rights.

11. On May 24, 2005, another arbitration hearing was held pursuant to the Pennsylvania Uniform Arbitration Act which

6

resulted in a decision which was mailed by the chairman of the arbitration panel from Carlisle, Pennsylvania on June 8, 2005.

  12. Plaintiff filed with the Cumberland County Court of Common Pleas a Motion to Vacate and/or Modify the Arbitration Award on July 15, 2005.

(Doc. 15, Exhibit A (exhibit references omitted).

  "'Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.'" *The Circle School v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 n.3 (3d Cir. 2000)).

  This court must apply Pennsylvania law in this diversity case.

  A court's review of an arbitration award is generally limited to whether the arbitration panel committed an error of law.  There is no dispute that the legal issue presented here is one that the court may decide.

  The plaintiff argues that it is a violation of 75 Pa. C.S. § 1731 for the insurance policy to provide that "[t]he limits of liability under any applicable bodily injury

7

liability bonds or policies [must] have been exhausted by payment of judgments or settlements" and that "[t]he limits of liability shall be reduced by all sums paid because of the 'bodily injury' by or on behalf of persons or organizations which may be legally responsible" because 75 Pa. C.S. § 1731(c) provides that "[u]nder insured motorists coverage shall provide protection for persons...legally entitled to recover damages..."  The plaintiff contends that she should have been permitted at arbitration to establish the amount that she is legally entitled to recover from each tortfeasor.

The plaintiff cites *Boyle v. Erie Insurance Company,* 656 A.2d 941, 942 (Pa. Super. Ct. 1995) in support of her position.  Her public policy argument is that it is not consistent with Pennsylvania public policy to require claimants to fully litigate questionable claims against multiple defendants, but that the Liberty Mutual policy effectively forces the plaintiff to bear the expense of going to trial against defendant Mearig even though the claim against defendant Mearig is questionable.  If she does not go to trial against defendant Mearig, she asserts, she is faced with the harsh punishment of giving credit for the full policy limits of defendant Mearig's policy.  The *Boyle* holding is, however, that exhaustion clauses such as that present in the plaintiff's Liberty Mutual policy are not *per se* invalid but may not be validly interpreted to require an insured to seek recovery from other than the owners and operators of vehicles involved in the accident.  The plaintiff here did seek and obtain a recovery

8

from Mearig by way of a settlement.  The present case does not involve a situation where an exhaustion clause has been used by an insurer to refuse coverage on the basis of a lack of exhaustion.  The case involves the insurer's decision as to the amount to be credited against the underinsured policy limits on the basis of a joint tortfeasor's policy limits when the settlement of the insured with the joint tortfeasor is for less than policy limits.

The Court in *Boyle* addressed this same issue indirectly in its holding (by stating that exhaustion clauses are not **per se** invalid) and directly in its discussion:

> [W]e hold that exhaustion clauses are not per se invalid, but they cannot validly be interpreted to require an insured to seek recovery from other than the owners and operators of vehicles involved in the accident.
>
> In the instant case, the appellee-insureds settled their tortfeasor claims against the drivers of the other vehicles. One of these settlements, however, was for less than the maximum coverage provided by the tortfeasor's liability insurance. Erie's policy provides that it shall not be obligated to pay underinsured motorist benefits until the limits of liability have been exhausted by payment of settlements or judgments. Does this clause in Erie's policy bar the plaintiff-insureds' claim for underinsured motorist benefits?
>
> To enforce the policy language strictly would have the effect of failing to provide the protection intended by the legislature for an insured driver. In some cases it may prevent an injured insured from accepting a reasonable, third party settlement and require that the third party litigation be pursued to final judgment. This would delay recovery when prompt payment was needed, would lessen the insured's recovery by requiring him or her to pay additional costs, and would unnecessarily burden the judicial system. "Where the best settlement available is less than the [tortfeasor's] liability limits, the insured should not be forced to forego settlement and go to trial in order

9

to determine the issue of damages." *Schmidt v. Clothier,* 338 N.W.2d 256, 260-261 (Minn.1983).

On the other hand, an exhaustion clause must be interpreted to provide protection to an insurance company against a demand by its insured to fill the "gap" after a weak claim has been settled for an unreasonably small amount. The statutorily mandated coverage for underinsured motorist benefits was not intended to permit the insured absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier. This was poignantly observed by the Supreme Court of Minnesota as follows:

> [T]he insured cannot obtain a below-limit settlement from the tortfeasor and then recoup the "gap" from the underinsurance carrier. Practically, the insured would have no incentive to obtain the best settlement if he or she is assured of recovering the "gap" from the underinsurer. Use of underinsurance benefits in this way runs counter to the agreement of the parties. It would also place the underinsurer at an unfair disadvantage in which it had no control over the insured's right to settle but yet had to pay the difference between the settlement and the liability limits.  It might also lessen the incentive of the liability carrier to make its best offer to the claimant.
> *Schmidt v. Clothier, supra*, 338 N.W.2d at 261.

We conclude, therefore, that the conflicting interests of insured and insurer can best and most fairly be served by construing the exhaustion clause in this case as a "threshold requirement and not a barrier to underinsured motorist insurance coverage." *Bogan v. Progressive Casualty Ins. Co.,* 36 Ohio St.3d 22, 28, 521 N.E.2d 447, 453 (1988), *modified in part on other grounds, McDonald v. Republic-Franklin Ins. Co.,* 45 Ohio St.3d 27, 543 N.E.2d 456 (1989). Thus, when the insureds settled their claim against the tortfeasor's liability carrier for less than policy limits, the underinsured motorist carrier was entitled to compute its payment to its injured insureds as though the tortfeasor's policy limits had been paid. Accord: *Hamilton v. Farmers Ins. Co. of Washington*, 107 Wash.2d 721, 728, 733 P.2d 213, 217 (1987). Under this view, the insureds will not be allowed underinsured motorist benefits unless their damages exceed the maximum liability coverage provided by the liability carriers of other drivers involved in the accident; and their insurer will, in any event, be allowed to credit the full amounts of the tortfeasors' liability coverages against the insureds' damages.

656 A2d at 943-945.

The defendants have cited two more recent decisions in their brief in support of their motion for summary judgment, *Krakower v. Nationwide Mutual insurance Company,* 2001 Pa. Super. Ct. 372 (2001), and *Bremer v. Prudential Property and Casualty Insurance Company,* No. 3:CV-03-1810, 2004 WL 1920708 (M.D. Pa., Aug. 18, 2004, Vanaskie, C.J.).  In *Krakower*, the Pennsylvania Superior Court held that an insured was entitled to coverage under the underinsured policy provision without having litigated a claim against the tortfeasor by way of a civil action so long as against the underinsured coverage limit there was credited the full amount of the third party liability policy limits.  In *Bremer*, the Court determined to follow the *Boyle* resolution of the issue presented in a case materially the same as this case, holding that the insurer was entitled to a credit for the full policy limits of a putative joint tortfeasor with whom the insured had settled for less that policy limits, and upholding an arbitration panel award and the determination of the arbitration panel not to determine pro rata liability shares of joint tortfeasors.  The plaintiff has not responded to the brief of the defendant in support of its motion for summary judgment, and has not in her brief in support of her motion for summary judgment addressed the *Krakower* or the *Bremer* decision.  Nor has the plaintiff addressed the concerns emphasized by the Court in *Boyle* that insurers may not fairly be made to fill the gap after a weak claim has been settled for an unreasonably small amount and

11

that underinsured motorist benefits were not enacted by statute to permit the insured to apportion insurance recoveries as between her own insurance company and the tortfeasor's liability carrier.  The plaintiff's invocation of the negative implications of going to trial may not be afforded controlling weight in this matter in considering the issue of the consequences of the absence of a litigated determination of joint tortfeasors' shares of liability.  It must simply be taken as the given that there is not such a litigated determination.

     We will follow the determination of the *Bremer* case as to the prediction of the resolution of this issue by the Pennsylvania Supreme Court because it is well reasoned and reaches a correct result.  The motion to vacate the arbitration award will be denied and the arbitration award will be confirmed.  An appropriate Order follows.

                                              ***/s/ J. Andrew Smyser***
                                              J. Andrew Smyser
                                              Magistrate Judge

Dated:  April 3, 2006.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIBETH CHUDYK-HEISHMAN,    :    CIVIL NO. **1:05-CV-1559**
                             :
            Plaintiff        :    (Magistrate Judge Smyser)
                             :
      v.                     :
                             :
LIBERTY MUTUAL INSURANCE CO.,:
                             :
            Defendant        :

### ORDER

**NOW, THIS 3rd DAY OF APRIL, 2006**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion to Vacate and/or Modify the Award of the Arbitrators (Doc. 1) is **DENIED**.

2. The decision that followed the May 24, 2005 arbitration hearing is **CONFIRMED**.

3. The Clerk of Court is directed to enter judgment in favor of defendant and mark this matter **CLOSED**.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge